# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**FILED**

**April 26, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 19-0738** (Marion County 17-F-160)

**Dale F.,**
**Defendant Below, Petitioner**


# MEMORANDUM DECISION


Petitioner Dale F., by counsel Scott A. Shough, appeals the July 29, 2019, order of the Circuit Court of Marion County that sentenced him following his guilty pleas to one count of incest and one count of first-degree sexual abuse.[1] The State of West Virginia, by counsel Lara K. Bissett, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

A grand jury indicted petitioner on two counts of second-degree sexual assault in violation of West Virginia Code § 61-8B-4(a)(1); two counts of sexual abuse by a parent, guardian, custodian, or person of trust in violation of West Virginia Code § 61-8D-5; and two counts of incest in violation of West Virginia Code § 61-8-12. The alleged victim was petitioner's daughter, M.F. Petitioner's trial was set for March 18, 2019.

On March 18, 2019, with the jury present and waiting, the circuit court held a plea hearing at petitioner's request. The trial court reviewed petitioner's six-count indictment, listing each count and its statutory penalty. The court then ensured that petitioner had received a copy of the indictment, that his counsel had reviewed the charges with him, and that petitioner fully understood

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in the case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles, L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

the charges against him. The court also instructed petitioner on his right to a jury trial and explained (1) what would happen during such a trial, (2) petitioner's presumption of innocence, (3) the State's burden of proof, (4) the sentencing phase of trial, and (5) petitioner's right to appeal the verdict. Petitioner's counsel noted that he and petitioner had met together about a dozen times prior to trial to discuss petitioner's case and that he had advised petitioner of his rights. Thereafter, the court clerk read petitioner's indictment aloud and the court advised petitioner that if he entered a guilty plea, he would waive any pretrial and nonjurisdictional defects.

Following this discussion, the State noted that it was willing to let petitioner enter into a plea agreement pursuant to *Kennedy v. Frazier*, 178 W. Va. 10, 357 S.E.2d 43 (1987),[2] to one count of incest, as charged in Count 3 of the indictment, and to one count of first-degree sexual abuse, a lesser-included offense of sexual assault in the second degree as charged in Count IV of the indictment. The circuit court then explained the penalties for those crimes. Petitioner responded that he understood the penalties and that he had no questions in that regard. The court asked if petitioner intended to enter *Kennedy* pleas and petitioner answered, "Yes." The court then ensured that petitioner understood the nature of such pleas. The court also explained that the State would provide a factual basis for those pleas.

Regarding the voluntariness of his plea, petitioner stated that (1) he understood that by entering into the plea agreement his sentence might be substantially less than if he went to trial and was found guilty; (2) he was not threatened into making a plea; and (3) he made the decision to enter guilty pleas "freely, knowingly, intelligently[,] and voluntarily" and "on the advice of counsel." The circuit court then asked if petitioner was ready to enter his plea. In response, petitioner had a private discussion with his counsel in the courtroom, followed by a second private discussion with his counsel outside the courtroom. Thereafter, petitioner entered *Kennedy* pleas to one count of incest and one count of first-degree sexual abuse.

The trial court accepted petitioner's guilty pleas and reviewed each term of the written plea agreement with him. The terms provided, among other things, that petitioner would be required to register for life as a sexual offender and to serve a term of supervised release following his release from prison. The court established that petitioner had read the plea agreement before he signed it, and that petitioner's counsel had fully explained the terms of the agreement. The court highlighted that the plea agreement provided that petitioner could have no contact of any kind with the victim (his daughter) or any member of her immediate family. The court also explained that both the State and petitioner were bound by the plea agreement, but that petitioner's sentence rested entirely within the court's discretion. Petitioner stated that he understood those conditions and that he still

---

[2] This Court held in Syllabus Point 1 of *Kennedy v. Frazier*, 178 W. Va. 10, 357 S.E.2d 43 (1987) that "[a]n accused may voluntarily, knowingly and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him." *See also North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

wished to enter into the plea agreement. Following this exchange, petitioner asked whether the victim could initiate contact with him when she is an adult. The State replied that it believed it was up to the victim to ask petitioner's supervisory authority to remove the restriction if she chose to do so. The trial court agreed, and petitioner then said that he wished to proceed with his plea agreement.

The trial court asked petitioner (1) whether he had received other promises or been given anything of value to get him to plead guilty; (2) whether anyone had threatened him or placed him in fear if he failed to plead guilty; (3) whether anyone induced him to plead guilty against his better judgment; and (4) whether he had any questions about his pleas, his rights, or anything else. Petitioner answered "No" to each of these questions. The trial court then asked petitioner if his guilty pleas were free and voluntary acts. Petitioner answered "Yes" to this question. Petitioner then testified that all of his answers had been truthful, that he had never suffered with or been treated for any mental illnesses, and that he understood all of the matters that the court had explained to him.

Thereafter, the State proffered the evidence it would have presented against petitioner at trial. The State asserted that the victim claimed that petitioner had engaged in non-consensual intercourse with her on March 5, 2017, and March 18, 2017, and that the details of the events were corroborated by phone records. The State also said that during petitioner's pre-trial incarceration, he had extensive communications with his sister and others in an effort to get the victim to recant her claim. Finally, the State claimed that petitioner threatened to physically assault witnesses if they testified against him and attempted to interfere with the proceedings.

The circuit court asked petitioner's counsel whether he could see any advantage to petitioner proceeding to trial. Counsel replied that it was in petitioner's best interests to enter into a plea agreement. Thereafter, the court found that: (1) the State established a basis in fact for petitioner's pleas; (2) petitioner's pleas were voluntarily, intelligently, and knowingly made with the mature advice of counsel; (3) petitioner was not coerced into entering into the plea agreement; (4) petitioner's entry of his guilty pleas was a reasonable effort to avoid the possibility of the significantly higher penalties following a trial; (5) by pleading guilty, petitioner knowingly consented to the possible imposition of a prison sentence despite his *Kennedy* pleas; and (6) there was a significant probability that a jury would convict petitioner of the six charges contained in his indictment. The court asked petitioner if he was satisfied with his counsel's representation, and petitioner answered in the affirmative. The court also explained the requirement that petitioner register as a sexual offender for the remainder of his life. The court then ordered that the case be sent to a probation officer for the preparation of a presentence investigation and report and adjourned the hearing.

Prior to sentencing, petitioner requested and received new counsel. Thereafter, at a May 20, 2019, sentencing hearing, petitioner's new counsel moved to continue the hearing given that the report from petitioner's court-ordered psychological evaluation had not yet been filed. Petitioner's counsel argued that the report would be helpful in determining whether petitioner was an appropriate candidate for alternative sentencing. The State opposed the motion on the grounds that (1) the victim had waited for a long time for this matter to be resolved; (2) petitioner was not a candidate for alternative sentencing given that, when he committed his crimes against M.F., he

was on parole for prior felony sex offenses against another daughter; and (3) petitioner is a registered sexual offender. The court denied the motion to continue, and the State called the victim to testify. However, before the victim could testify, petitioner moved to withdraw his guilty pleas. The State opposed the motion and argued that petitioner had entered his pleas; his trial counsel had performed exceptionally well; the court allowed petitioner to go off the record three times during the plea hearing to consult with his then-counsel; the court gave petitioner every opportunity to fully consider and evaluate each issue that arose prior to the entry of his pleas; and there was no factual or legal basis for the withdrawal of petitioner's pleas.

The court responded that when petitioner's new counsel was appointed, it set a deadline for the submission of any motion relevant to this proceeding, and that the deadline had passed without any motion being filed. Petitioner's counsel admitted that, after the deadline to file a motion had passed, petitioner told him that he wanted to withdraw his guilty pleas. Thus, counsel made the motion at the sentencing hearing. The State objected to the withdrawal of petitioner's guilty pleas. The court responded that it had heard nothing indicating that petitioner did not knowingly, intelligently, freely, and voluntarily enter his *Kennedy* pleas and denied petitioner's motion to withdraw those pleas. Thereafter, the victim testified to petitioner's sexual abuse. Petitioner then allocuted regarding sentencing, and his counsel asked for concurrent sentencing. The court ordered petitioner to undergo a diagnostic evaluation pursuant to West Virginia Code § 62-12-7(a), and then recessed the sentencing hearing pending the results of the evaluation.

Petitioner's sentencing hearing resumed on July 22, 2019. Petitioner's counsel again asked the court to allow petitioner to withdraw his guilty pleas. The court reviewed the history of the case before denying the motion. A discussion of petitioner's history, his diagnostic evaluation, and the facts of the case followed. By order entered July 29, 2019, the trial court sentenced petitioner to not less than five nor more than fifteen years in prison and a fine of $5,000.00 on the incest count, and to not less than one nor more than five years in prison on the first-degree sexual abuse count. The court ordered that both sentences be served consecutively. The court also ordered that petitioner be subject to post-conviction sex offender supervision for forty years following his release from prison, and that he have no contact with the victim and her immediate family members.

Petitioner now appeals. With regard to the withdrawal of a guilty plea prior to sentencing, we have held that:

> Notwithstanding that a defendant is to be given a more liberal consideration in seeking leave to withdraw a plea before sentencing, it remains clear that a defendant has no absolute right to withdraw a guilty plea before sentencing. Moreover, a trial court's decision on a motion under Rule 32(d) of the West Virginia Rules of Criminal Procedure will be disturbed only if the court has abused its discretion.

Syl. Pt. 2, *Duncil v. Kaufman*, 183 W. Va. 175, 394 S.E.2d 870 (1990).

Petitioner raises three assignments of error on appeal: First, he argues that the trial court erred by failing to allow him to withdraw his guilty pleas given the circumstances under which

they were offered. Second, petitioner claims that the trial court should have acknowledged his allegations of prosecutorial misconduct and the ineffective assistance of his counsel as the bases for allowing petitioner to withdraw his guilty pleas. Third and lastly, petitioner asserts that he relied upon incorrect information from the State and the circuit court in deciding to proceed with the entry of guilty pleas.

Despite listing three assignments of error, petitioner does not address each assignment of error individually and, instead, argues as follows: Rule 32(e) of the West Virginia Rules of Criminal Procedure provides, in part, that a trial court "may permit withdrawal of the plea if the defendant shows any fair and just reason." Petitioner contends that the circuit court failed (1) to properly consider the issues raised by petitioner and, instead, relied on petitioner's plea soliloquy to find that there was no basis to allow him to withdraw his guilty pleas; and (2) to weigh petitioner's counsel's failure to fully litigate the motion to withdraw petitioner's pleas.

Petitioner admits that the trial court complied with Syllabus Point 3 of *Call v. McKenzie*, 159 W. Va. 191, 220 S.E.2d 665 (1975),[3] in taking his guilty plea. Nevertheless, he argues that the court's reliance on his answers was misplaced because (1) during his off-the-record discussions with his first counsel, he indicated he did not want to enter a guilty, and (2) he passed notes to his counsel in court about the proposed plea. Petitioner also claims that his counsel failed to file a written motion to withdraw his guilty pleas even though he asked counsel to file such a motion. Petitioner states that he attempted to do so by filing various documents with the court. He highlights that at the May 20, 2019, sentencing hearing, he told the court he had little time to consider his plea and that he stopped the plea hearing several times to speak with counsel. He contends that his counsel pressured him into entering guilty pleas. Petitioner further argues that his second counsel (1) did not address his motion to withdraw his plea at the May 20, 2019, hearing and, instead, moved to continue the sentencing hearing, and (2) was clearly unprepared or unable to argue a motion to withdraw the pleas.

---

[3] Syllabus Point 3 of *Call v. McKenzie* provides:

> When a criminal defendant proposes to enter a plea of guilty, the trial judge should interrogate such defendant on the record with regard to his intelligent understanding of the following rights, some of which he will waive by pleading guilty; 1) the right to retain counsel of his choice, and if indigent, the right to court appointed counsel; 2) the right to consult with counsel and have counsel prepare the defense; 3) the right to a public trial by an impartial jury of twelve persons; 4) the right to have the State prove its case beyond a reasonable doubt and the right of the defendant to stand mute during the proceedings; 5) the right to confront and cross-examine his accusers; 6) the right to present witnesses in his own defense and to testify himself in his own defense; 7) the right to appeal the conviction for any errors of law; 8) the right to move to suppress illegally obtained evidence and illegally obtained confessions; and, 9) the right to challenge in the trial court and on appeal all pre-trial proceedings.

159 W. Va. 191, 191-92, 220 S.E.2d 665, 667 (1975)

Petitioner next argues that, as of the date of his final sentencing hearing, his new counsel had not yet filed a written motion to withdraw petitioner's guilty plea and, instead, renewed the oral motion to withdraw petitioner's pleas. Petitioner contends that his counsel refused the court's offer to argue or present testimony on this issue. Petitioner claims that, as a result of these alleged failures, the circuit court ruled that there was no basis upon which to grant petitioner's motion to withdraw his pleas.

Petitioner also argues that his testimony at the hearings below – that he was entering his pleas freely, voluntarily, and intelligently – was not reliable because he was acting under duress of the pending trial and that his counsel failed to seek additional time to allow petitioner to consider the plea offer.

Finally, petitioner argues that his written plea agreement includes misinformation as to whether his daughter, upon reaching majority, may contact him if she wishes to do so. Petitioner believes that because that information was incorrect, the entry of the plea agreement is "problematic."

We address each of petitioner's three assignments of error in turn. As noted above, petitioner first argues that the trial court erred in failing to allow him to withdraw his guilty pleas given the circumstances under which they were offered. We find no error. "In a case where the defendant seeks to withdraw his guilty plea before sentence is imposed, he is generally accorded the right if he can show any fair and just reason." Syl. Pt. 1, *State v. Olish*, 164 W. Va. 712, 266 S.E.2d 134 (1980). This is so because "[i]n the ordinary situation, the withdrawal of the guilty plea prior to sentencing places both parties in their original position and enables the State to try the defendant on all charges. The defendant gains no advantage since he is returned to his original position and is again subject to trial." *Id.* at 717, 266 S.E.2d at 137. However, it remains clear "that a defendant has no absolute right to withdraw a guilty plea before sentenc[ing]." *United States v. Rawlins*, 440 F.2d 1043, 1045-46 (8th Cir. 1971). Instead, it is within the trial court's discretion to grant or deny a motion to withdraw such a plea. *United States v. Boone*, 869 F.2d 1089, 1091 (8th Cir. 1989) (citing *United States v. Moore*, 822 F.2d 35, 37 (8th Cir. 1987)).

The reason for this rule qualifying the right to withdraw a previously tendered guilty plea is set forth in *United States v. Barker*, 514 F.2d at 221, quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747, 756 (1970):

"Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere gesture, a temporary and meaningless formality reversible at the defendant's whim. In fact, however, a guilty plea is no such trifle, but 'a grave and solemn act,' which is 'accepted only with care and discernment.'"

*Duncil*, 183 W. Va. at 179, 394 S.E.2d at 874. Here, petitioner did not demonstrate "any fair or just reason" to withdraw his guilty pleas. Instead, he claims that he was reluctant to plead guilty

6

and did not have sufficient time to consider his pleas. The record does not support those claims. Moreover, petitioner admits, and the record supports, that the circuit court engaged in a thorough plea colloquy with petitioner pursuant to *Call*, which mandates that,

> [w]here there is a plea bargain by which the defendant pleads guilty in consideration for some benefit conferred by the State, the trial court should spread the terms of the bargain upon the record and interrogate the defendant concerning whether he understands the rights he is waiving by pleading guilty and whether there is any pressure upon him to plead guilty other than the consideration admitted on the record.

*Id.* at 192, 220 S.E.2d at 667-68, syl. pt. 4. The circuit court fully complied with this requirement. Finally, *Call* requires that,

> [a] trial court should spread upon the record the defendant's education, whether he consulted with friends or relatives about his plea, any history of mental illness or drug use, the extent he consulted with counsel, and all other relevant matters which will demonstrate to an appellate court or a trial court proceeding in Habeas corpus that the defendant's plea was knowingly and intelligently made with due regard to the intelligent waiver of known rights.

*Id.* at syl. pt. 5. The circuit court also complied with this requirement. Accordingly, the circuit court did not abuse its discretion in denying petitioner's motion to withdraw his guilty pleas.

Petitioner further argues that the circuit court should have "looked beyond" his answers at his plea hearing because he plainly expressed "by other means" his reluctance to enter into the plea agreement. In fact, the circuit court did notice the discussions between petitioner and his first counsel at the plea hearing and inquired whether petitioner needed additional time to speak with counsel. Counsel and petitioner then left the courtroom to discuss the plea. Shortly thereafter, petitioner and his counsel returned to the courtroom and petitioner entered his guilty pleas. Petitioner also stated that he fully understood the pleas and that he was entering them knowingly, voluntarily, and intelligently. Finally, when petitioner moved to withdraw his pleas, he offered no testimony or other evidence to support the motion; nor did he call his first counsel or any other witness to testify on his behalf. Thus, petitioner utterly failed to show "any fair and just reason" to withdraw his pleas. Accordingly, the circuit court did not abuse its discretion in denying petitioner's motion.

We, likewise, reject petitioner's second assignment of error, that the trial court erred in failing to acknowledge the allegations of prosecutorial misconduct and the ineffective assistance of petitioner's counsel as the bases for allowing petitioner to withdraw his guilty plea. Petitioner claims that he asked both his first and second counsel to file a motion to withdraw his guilty pleas but that neither complied. Petitioner contends that his second counsel was unable or unprepared to argue a motion to withdraw the pleas at his sentencing hearing. Petitioner asserts that this failure constituted a fair and just reason for the court to grant his motion to withdraw his guilty pleas.

Petitioner fails to demonstrate any prosecutorial misconduct given that he offers no evidence of such misconduct and the record suggests that there is no such evidence.[4] As for petitioner's claim of ineffective assistance by his counsel, he points to his second counsel's alleged failure to file a written motion to withdraw his guilty pleas and to his claim that his second counsel failed to adequately argue for the withdrawal of his guilty pleas at the sentencing hearing. As we have oft said, claims of ineffective assistance of counsel are not ripe on direct appeal. *See State v. Miller*, 194 W. Va. 3, 14, 459 S.E.2d 114, 125 (1995). "In cases involving ineffective assistance in direct appeals, intelligent review is rendered impossible because the most significant witness, the trial attorney, has not been given the opportunity to explain the motive and reason behind his or her trial behavior." *Id.* at 14-15, 459 S.E.2d at 125-26. Such is the case here.

In petitioner's third and final assignment of error, he argues that he relied upon incorrect information from the State and the circuit court in deciding to enter his guilty pleas. Specifically, during petitioner's plea colloquy, he asked if his victim could contact him in the future if she wanted to do so. The State and the court indicated that they believed the victim could do so. However, petitioner now believes that the State and the court were mistaken. Petitioner claims that he relied on that mistake "in some degree" in deciding to plead guilty. Thus, he contends that, due to the incorrect information, his pleas were not intelligently made.

Petitioner offers no evidence that the State and the court's comments regarding any potential future contact with his victim were incorrect. We have said that "'"[t]he burden of proving that a plea was involuntarily made rests upon the pleader." Syllabus point 3, *State ex rel. Clancy v. Coiner*, 154 W.Va. 857, 179 S.E.2d 726 (1971).' Syllabus Point 1, *State ex rel. Wilson v. Hedrick*, 180 W.Va. 689, 379 S.E.2d 493 (1989)." *Duncil*, 183 W. Va. at 176, 394 S.E.2d at 871, syl. pt. 4. Thus, petitioner fails to show that the State or the circuit court misled him or that he was unduly influenced by the State's and the court's answer. In fact, petitioner admits that he relied on that answer only "to some degree." Accordingly, we reject petitioner's claim that his guilty pleas were not intelligently made due to allegedly incorrect information.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 26, 2021

---

[4] While this case was pending below, petitioner Dale F. brought an action against the prosecutor and the investigator who investigated the case on the State's behalf. *See Dale F. v. Peters*, No. 19-0594, 2020 WL 1674019 (W. Va. Apr. 6, 2020). Petitioner alleged that the prosecutor acted unethically and illegally in an attempt to convict him. Specifically, petitioner claimed that the prosecutor illegally accessed petitioner's sealed juvenile files and shared the information found therein with his defense counsel. *Id.* at *2. The circuit court dismissed the case on the grounds that the defendants were entitled to statutory immunity and to immunity pursuant to the common law doctrine of prosecutorial immunity; and that the prosecutor was an improper party. *Id.* at *3. We affirmed the circuit court's decision on the ground of prosecutorial immunity. *Id.*

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton